HALL, Judge.
Jules D. Brown, d/b/a Brown & Sons Home Repair Specialists brought suit against Wilson P. Abraham [1] seeking to recover the sum of $2,836.47 for labor performed and materials furnished in connection with the repair of eight houses belonging to defendant in a subdivision located in Jefferson Parish. In paragraph 2 of his petition plaintiff alleged that: “In October of 1967, defendant as owner contracted with petitioner for the repair of certain houses located in Waggaman, Louisiana.”
Defendant answered alleging that the contract referred to by plaintiff is a written contract dated October 22, 1967 by which plaintiff contracted to do certain work on certain designated houses for designated prices and on certain terms and conditions and that plaintiff failed to perform his obligations under the written contract, and in the alternative that the most that plaintiff could recover is the sum of $1,225.00, that being the total contract price. Defendant coupled with its answer a third-party demand against William G. Wiegand, Jr. However (although the record does not disclose it) we are informed by counsel that the Trial Judge severed *21 the trial of the third-party demand from the trial of the main demand. Wiegand is therefore not a party to this appeal.
Following trial on the merits judgment was rendered in favor of plaintiff against Wilson P. Abraham Construction Corporation in the full amount prayed for plus interest and costs. Defendant appealed.
The first question presented is whether plaintiff sued on the written contract dated October 22, 1967.
The facts are as follows:
Defendant was the owner of ten houses located in Waggaman, Louisiana, which needed repairs in order to make them salable. William G. Wiegand, Jr. was a real estate broker who had been employed by defendant to sell houses in another subdivision and the act of sale of one of these houses viz. a house on Jean Street in Live Oaks Subdivision was passed sometime in August 1967. Wilson P. Abraham, president and sole stockholder of the defendant corporation, was present at this sale as was likewise Wiegand and plaintiff, Brown. Wiegand had hired plaintiff to repair this house for account of Abraham on a cost plus basis and at the act of sale plaintiff presented his bill for repairs and Abraham paid it.
Sometime in August 1967, but previous to the act of sale of the Jean Street house, Abraham had employed Wiegand to sell the houses located in Waggaman which belonged to his corporation. The houses had to be repaired in accordance with F. H.A. standards before they could be sold and Abraham asked Wiegand if he would find someone to do the work. Wiegand contacted six contractors who did repair work of this type. He also contacted plaintiff who went out and looked at some forty odd houses at Wiegand’s request. However, it developed that Abraham’s corporation had actual title to only ten of these houses, and following this inspection plaintiff gave Wiegand a list of the repairs necessary for each of the ten houses and quoted a specific price for repairing each house. Wiegand in turn gave the list to Abraham. According to plaintiff’s testimony this took place some three weeks before he had completed repairs on the Jean Street house. He further testified that on the day the act of sale of the Jean Street house was passed Abraham told him to go ahead and repair the ten houses in Waggaman, but when he went to Wag-gaman some three weeks after his first inspection he found that the ten houses had been vandalized and were then missing screens, screen doors, and had broken windows and were otherwise damaged; that he realized he couldn’t repair the houses for the prices he had quoted since the vandalism had rendered more work necessary than was shown on his original inspection.
Before plaintiff did any work on these houses he contacted Wiegand and asked Wiegand what to do. Wiegand told him to do what was necessary to fix the houses as they had to be fixed before they could be sold. No price was fixed on the extra repairs.
Wiegand testified that he advised Abraham of the need for the extra repairs on account of the vandalism and that with Abraham’s authority he (Wiegand) authorized plaintiff to perform these extra needed repairs. He further testified that Abraham personally knew that plaintiff was performing this work above and beyond that called for in his original quotation, and that he was in daily telephone contact with Abraham advising him of plaintiff’s progress with the work.
Abraham denied these frequent conversations with Wiegand and testified that he talked to Wiegand maybe once or twice and the main reason for doing so was that he wanted a written contract from plaintiff; that he could not pay plaintiff until he had a written contract and until plaintiff’s work had been inspected.
On October 18, 1967 plaintiff mailed Abraham invoices covering repairs on *22 three of the houses which he had completed up to that date. These invoices listed work done under his original quotation plus the extra repairs performed by him as the result of vandalism. Abraham at first denied ever receiving these invoices but plaintiff testified that Abraham telephoned him at his home and told him he had received the bills and that they were exorbitant and he was not going to pay more than the original price quoted. During this conversation plaintiff discussed the vandalism problem with him. Plaintiff also testified Abraham told him that he was not going to have any more dealings with Wiegand; that he questioned Wie-gand’s honesty. Abraham testified that this conversation took place somewhere between October 18 and October 22, 1967 and that in this conversation he told plaintiff to mail him a contract and the moment he finished the work to call Mr. Thompson who would inspect it.
Following this telephone conversation plaintiff mailed Abraham a contract form furnished by a building supply company in which he quoted the original list of repairs and the original prices he had given Wiegand in August. The contract form is signed by plaintiff and is dated October 22, 1967. Attached to this form was a lengthy covering letter dated the same date which commences as follows:
“At the request of Mr. W. G. Wie-gand, I am sending you a resume of what I proposed to do to your houses in (illegible) Acres, Waggaman, Louisiana. At the time I examined the houses sometime in August, I made a proposal to Mr. Wiegand. I would bring the houses up to FHA requirements.”
Thereafter the letter goes on to discuss the damage done by vandals and states:
“I brought this to the attention of Mr. Wiegand, and was told that I would have to replace these items and make an extra charge for this work.”
Defendant contends that the contract form dated October 22, 1967 is the contract sued upon and is the basis of the obligation between the parties.
It, is clear to us as it was to the Trial Judge that the so called “contract” which plaintiff mailed to Abraham on October 22, 1967 was merely a memorandum of the work and prices the parties had verbally agreed to in August and that plaintiff did not sue on this document. On the contrary plaintiff’s suit is upon the verbal agreement made in August 1967 to do certain work for fixed prices as supplemented by the verbal agreement he made with Wiegand to do the extra work for which no price had been fixed.
At the time he wrote the letter of October-22, 1967 plaintiff had completed repairs on five houses and had done some work on three others and none of the houses had been inspected. On October 28, 1967 he mailed other invoices to Abraham covering the balance of the work he had performed to that date and on October 30, 1967 he quit the job because he had all of his money tied up and could not get an inspection of any of it.
Defendant-appellant contends that this is a suit on the “contract” dated October 22, 1967 and could not be modified by parole testimony and that the Trial Judge erred in awarding a judgment sounding in quantum meruit while the suit was based on a written contract. He also contends that the Trial Judge erred in failing to accept any part of Thompson’s testimony and erred in failing to reduce the amount of the judgment by the amount Abraham expended to complete plaintiff’s work.
As we have previously stated we are of the opinion that plaintiff’s suit is on the verbal agreement entered into in August as supplemented by the verbal agreement relative to the extra work. Plaintiff has not in any manner sought to modify, amend or alter this verbal agreement as to the work to be done thereunder nor the prices to be paid therefor. Insofar as the extra work is concerned plaintiff’s suit is in quantum meruit.
*23 In his reasons for judgment the Trial Judge clearly shows that he did not believe Thompson’s testimony relative to the deficiencies in the work performed by plaintiff.
We quote the following excerpt from the Trial Judge’s opinion:
“However, when Brown was set to begin work, he realized that because of intervening vandalism and other reasons, he couldn’t fully repair the houses for the agreed-on price.
“Brown then contacted William Wie-gand, a realator (sic) who acted as the coordinating (and communicating) link between Brown and defendant. Through Wiegand, Brown received authorization to proceed with the work.
“The president of defendant corporation, Wilson P. Abraham, denied giving Wiegand the authority to give Brown the go-ahead.
“As matters of fact, the Court found that when Brown advised Wiegand that additional repair work had to be done, more than had been contemplated, Wie-gand contacted Abraham, who did in fact instruct Wiegand to authorize Brown to proceed. Thus, Brown is entitled to the relief he seeks.
“In arriving at this conclusion, the Court disregarded the testimony of Charles Thompson, a major defense witness. Thompson said that Brown’s work was unsatisfactory and incomplete.
“This testimony was contradicted by Brown and Wiegand; further, Abraham made no complaint to Brown nor did the construction company ask Brown to finish the work before requesting payment.
“Instead, defendant simply refused to pay.”
The Trial Judge’s findings and conclusions are fully supported by the record.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by defendant-appellant.
Affirmed.

. The parties by written stipulation substituted Wilson P. Abraham Construction Corporation as the proper party defendant in lieu and in place of Wilson P. Abraham, individually.